Filed 2/22/24  In re M.M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| In re M.M., a Person Coming Under the Juvenile Court Law. | D082736 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J521147A) |
| v. | |
| T.M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Alexander M. Calero, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Lisa M. Maldonado, Chief Deputy County Counsel, and Kristen M. Ojeil, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

T.M. (Father) appeals from an order terminating family reunification services related to his daughter, M.M., at a six-month review hearing. (Welfare and Institutions Code[1] section 366.21.) Father's sole contention on appeal is that the juvenile court and the San Diego County Health and Human Services Agency (Agency) failed to comply with their duties of inquiry under the federal Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) and section 224.2, by failing to inquire of extended family members. The Agency contends it had no duty to conduct an initial inquiry of M.M.'s extended family members because she was not removed pursuant to section 306. But even assuming the existence of such a duty, the Agency argues it complied with its obligations.

Assuming without deciding that the Agency had a duty to inquire of M.M.'s extended family members as part of its initial investigation into her potential Native American heritage, we find no error in the Agency's inquiries or the juvenile court's findings under section 224.2. Further, because there was no readily obtainable information that was likely to bear meaningfully on whether M.M. was a Native American child, we conclude any purported error was harmless. Finding no prejudicial error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In November 2022, the Agency petitioned the juvenile court under section 300, subdivision (b), on M.M.'s behalf. The petition alleged M.M. was

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Because Father's sole contention on appeal relates to ICWA, we limit our discussion of the factual background accordingly.

at substantial risk of serious harm or illness due to the continuing drug use of Father and M.M.'s mother, J.H. (Mother).[3]  The court made prima facie findings that M.M. fell within the jurisdiction of the juvenile court and detained her in the care of her maternal grandmother.  The court also ordered the Agency to investigate M.M.'s potential Native American ancestry and report its findings to the court.  Although Mother and Father were not present at the hearing, the court issued an order requiring them to disclose to the Agency the names, residences, and any known identifying information of any relatives.

In its detention report, the Agency discussed M.M.'s potential Native American ancestry.  The report documented statements from Mother and Father in April 2022, in which they both denied Native American heritage.  In November 2022, the Agency again left voicemails and sent text messages to both parents asking them about potential Native American ancestry.  Mother denied any Native American heritage, and Father did not respond.

The Agency interviewed maternal grandmother and she stated she believed she has Native American heritage.  However, she had no information regarding membership in any particular tribe.  She stated that her grandfather and uncles were Native American, but of them, only one uncle was alive.  Maternal grandmother indicated she did not have contact information for her uncle, and she stated he was living in Tijuana, Mexico.  The social worker asked if any family member had the uncle's contact information, and she responded that she would have to ask her relatives.

---

[3]  Mother is not a party to this appeal and is discussed only when relevant.

At the jurisdiction and disposition hearing, the juvenile court found Mother voluntarily absented herself from the proceedings and that Father's whereabouts were unknown. The court made true findings on the petition and declared M.M. a dependent of the juvenile court. The court found, without prejudice, that ICWA did not apply but noted that if additional information was brought to the court's attention, the court retained jurisdiction to address that information. The court again ordered the parents to disclose the names, residences, and any known identifying information of any relatives of M.M.

On May 11, 2023, Father made his first court appearance before the juvenile court. The court appointed counsel for Father and directly inquired whether he had any Native American heritage. The court also asked Father whether he or any of his relatives were members of a tribe, lived on a reservation, or received financial benefits from a tribe, and whether anyone in his family was active in tribal activities or spoke a Native American language. Father stated he did not believe he had Native American ancestry and answered "no" to the court's other inquiries.

Two weeks after the hearing, an Agency social worker attempted to ask Father additional questions related to ICWA, but Father expressly declined to provide any information. The Agency social worker also spoke with Mother and Father over the phone to attempt to schedule a meeting. During the call, the parents stated they did not want to speak with anyone from the Agency and hung up on the social worker as he was speaking. The Agency's reports indicate Father had minimal contact with the Agency since dependency proceedings were initiated.

On September 7, 2023, the juvenile court conducted a six-month review hearing. At the hearing, the Agency asked the court to terminate

reunification services for Father and M.M.'s counsel joined the Agency's request. The court found that Father's progress had been minimal and terminated his family reunification services. The minute order from the hearing reflects that the court found, without prejudice, ICWA did not apply to the proceeding. This appeal followed.

## DISCUSSION

Congress enacted ICWA in order to address the separation of " 'Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes. [Citation].' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) Thereafter, our Legislature enacted statutory provisions to effectuate ICWA's purposes, including section 224.2. (*Id.* at p. 9.) Under the statute, the juvenile court and Agency have an "affirmative and continuing duty" to inquire whether a child subject to juvenile dependency may be an Indian child. (§ 224.2, subd. (a).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).) First, the Agency's duty of initial inquiry requires it to "ask all involved persons whether the child may be an Indian child." (*Ibid.*) Second, if the Agency's "initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' ([§ 224.2], subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*Ibid.*) The court must also ask each party at their first appearance "whether the participant knows or has reason to know that the child is an Indian child" and "instruct the parties to inform

5

the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*In re D.S., supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid.*)

As an initial matter, the parties disagree on the scope of the Agency's duty to interview extended family members under section 224.2, subdivision (b), and whether, as a factual matter, M.M. was taken into temporary custody pursuant to section 306.[4] Section 224.2 states, in relevant part, "[i]f a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307," there is a duty to inquire of "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).)

---

[4] Section 306, subdivision (a), provides, "Any social worker in a county welfare department, or in an Indian tribe that has entered into an agreement pursuant to Section 10553.1 while acting within the scope of his or her regular duties under the direction of the juvenile court and pursuant to subdivision (b) of Section 272, may do all of the following: [¶] (1) Receive and maintain, pending investigation, temporary custody of a child who is described in Section 300, and who has been delivered by a peace officer. [¶] (2) Take into and maintain temporary custody of, without a warrant, a child who has been declared a dependent child of the juvenile court under Section 300 or who the social worker has reasonable cause to believe is a person described in subdivision (b) or (g) of Section 300, and the social worker has reasonable cause to believe that the child has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety."

There is currently a split of authority, pending review before the California Supreme Court, as to whether the Agency's initial duty to inquire of extended family members is triggered *only* if the child is placed into temporary custody without a warrant pursuant to section 306 or 307. (Compare *In re Robert F.* (2023) 90 Cal.App.5th 492, 497, review granted July 26, 2023, S279743; *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677–679, review granted July 26, 2023, S280572; *In re Adrian L.* (2022) 86 Cal.App.5th 342, 353–374 (conc. opn. of Kelley, J.) with *In re Delila D.* (2023) 93 Cal.App.5th 953.)

As we shall discuss, we need not resolve the legal issue of the scope and application of section 224.2, subdivision (b), because the record demonstrates the Agency complied with its inquiry duties even assuming the existence of an obligation to inquire of extended family members.

Turning first to M.M.'s maternal side, Father argues the Agency erred by failing to "follow up on whether [maternal grandmother] had obtained contact information for her uncle in Mexico," as part of its duties to interview extended family members during its initial inquiry. However, ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, *aunt or uncle*, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2), italics added; § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].) M.M.'s great-uncle does not qualify as an extended family member for the purposes of ICWA because he is M.M.'s great-uncle, rather than her uncle.

Regardless, the record reflects that the Agency *did* make efforts to obtain the great-uncle's contact information from maternal grandmother, but that she failed to provide the requested information. When maternal

7

grandmother indicated her uncle was Native American and may have further ICWA-related information, the Agency represented that it would "explore possible Native American heritage with the . . . maternal great uncle and [would] update the court on its ICWA inquiry efforts." Thereafter, the Agency followed-up with maternal grandmother about her uncle and asked whether any family members had his contact information. She responded that she "would have to ask for his contact information," but the record does not reflect she provided the Agency with the requested contact information.

Accordingly, the record reflects the Agency attempted to appropriately investigate the information provided by maternal grandmother related to her uncle. However, "[t]he Agency is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S., supra*, 46 Cal.App.5th at p. 1053.) The Agency's efforts to acquire information related to the maternal great-uncle, who resided out of the country, were reasonable under the circumstances.

Turning next to M.M.'s paternal side, the record reflects Father had minimal contact with the Agency throughout the case. When the Agency was able to communicate with Father, he denied any Native American heritage. Although the Agency attempted to make further ICWA-related inquiries with Father, he either failed to answer or expressly declined to provide such information. The parents told the Agency social worker they "did not want to speak to anyone from the Agency," and hung up on the social worker during a phone call. The Agency was not required to continue to make inquires of Father that he expressly and repeatedly refused to answer. Rather, the Agency is simply required to make "a good faith effort to gather information about [a child's] membership status or eligibility," (*In re Dominic F.* (2020)

8

55 Cal.App.5th 558, 570), which the record reflects the Agency has done in this case.

Further, Father's claim on appeal that the record does not indicate the "juvenile court ever asked [F]ather about his family background" is not supported by the record. The court directly inquired of Father whether he had any Native American heritage, and whether he or any of his relatives were members of a tribe, lived on a reservation, or received financial benefits from a tribe, and whether anyone in his family was active in tribal activities or spoke a Native American language. Father responded he did not believe he had Native American heritage and answered "no" to the court's other inquiries. The court also issued multiple orders directing Father to provide the Agency with contact information for available family members. Accordingly, the record indicates the court did inquire about his "family background" and potential Native American ancestry.

Contrary to Father's argument, section 224.2 does not impose a duty on the juvenile court to directly ask Father "about his extended family and whether any family member could provide information about the family's heritage." Rather, section 224.2 simply requires the court to "ask . . . whether the participant knows or has reason to know that the child is an Indian child" and "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) The juvenile court's orders directing the parents to provide information related to family members, and its direct inquiries of Father, satisfied its obligations under section 224.2.

Finally, even were we to find deficiencies in the Agency's inquiry or the juvenile court's findings, we conclude any such error was harmless. When evaluating an ICWA inquiry for harmless error, this court has adopted the

9

approach articulated in *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*). (See *In re Y.M.* (2022) 82 Cal.App.5th 901, 916 ["until such time that the California Supreme Court directs otherwise, we conclude that the *Benjamin M.* standard should be applied in determining the prejudicial effect of an agency's failure to comply with its section 224.2, subdivision (b) duty of initial inquiry."].) Under *Benjamin M.*, "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M.*, at p. 744.)

Here, the Agency performed an ICWA inquiry of Mother, Father, and the maternal grandparents. Mother, Father, and maternal grandfather denied Native American ancestry, and Father refused to provide further information to the Agency when the social worker attempted to make inquiries regarding ICWA. Although maternal grandmother stated her belief that she has Native American heritage, she denied having any information relating to tribal membership or benefits. The Agency attempted to obtain contact information for the maternal great-uncle as part of its ongoing inquiry efforts, but they did not receive the information requested. Accordingly, maternal grandmother was unable to provide any information that would bear meaningfully upon whether M.M. was a Native American child, and any potential information from the maternal great-uncle was not

10

readily attainable.  The errors alleged by Father were therefore harmless under the standard articulated in *Benjamin M., supra*.[5]

DISPOSITION

The September 7, 2023 order is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

HUFFMAN, J.

---

[5]     We note, however, that the juvenile court's ICWA-related findings in the order from which Father appeals were issued without prejudice, and the Agency's duty of inquiry is ongoing.  (See *Isaiah W., supra*, 1 Cal.5th at 9 [agency and court have an " 'affirmative and continuing duty to inquire' " whether a child " 'is or may be an Indian child' "]; Cal. Rules of Court, rule 5.481(a)(5) [agency has duty "on an ongoing basis" to report "a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status"].)  Thus, if maternal grandmother provides further substantiating evidence of Native American ancestry to the Agency, it would be required to investigate this information.